UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO. 2:15CR31-PPS |
| | ) |
| RONNIE CORNELL COSBY, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

The United States charged defendant Ronnie Cosby with various counts of sex trafficking of children, production of child pornography, and sex trafficking by coercion. His trial was set to begin on September 6, 2017. Despite this case having been pending for over two years, three weeks before trial, on August 21, Cosby filed a dilatory motion to suppress the search of his cell phone seized during the execution of a search warrant. [DE 109.] I could readily deny the motion as being way too late because good cause for the dilatory filing has not been shown. *See United States v. Adame*, 827 F.3d 637, 647 (7th Cir. 2016); Fed.R. Crim. P. 12(c)(3). Nonetheless, I decided at the pretrial conference on August 22, to order the government to respond to the suppression motion. [DE 114, 116.]

After reviewing the briefing, I determined that a hearing on the motion was not required because the parties agreed on the relevant facts and the motion turned on legal questions only. The shortness of time before the trial did not permit me to prepare a fully explanatory order, but in an order issued August 29, I announced my conclusion

that the motion would be denied, indicating that an explanatory opinion would follow. [DE 122.] This is that opinion. The trial commenced as scheduled, and on September 13, the jury found Cosby guilty of five of the charges, and not guilty of two.

**Factual Background**

On March 17, 2015, Detective Sergeant Mark Biller of the Hammond Police Department applied to a judge of the Lake County Superior Court for a warrant to search Apartment 204 at 442 Michigan Street in Hammond, Indiana. [DE 109-1 at 2.] Biller's affidavit in support of the application described his investigation into child pornography and promotion of prostitution offenses. [*Id.* at 4.] The seven-page single spaced affidavit described in detail a child (and adult) prostitution ring being run by Cosby out of his apartment in Hammond and elsewhere. Whether there was probable cause for the search is not in question. The affidavit recounted information obtained from victims, Jane Doe #1 and Jane Doe #2, including that Cosby had used his black touch screen cell phone to take nude and partially nude pictures of both Jane Does which he then used to advertise Jane Doe #1 and Jane Doe #2 for acts of prostitution. [*Id.* at 7-8.]

Based on "his knowledge, training and experience," Biller attested to "the capability of smart phones to store images in digital form" as a "common repository for child pornography." [*Id*. at 8.] It is plain from the application for the search warrant that the officers were seeking permission to search the contents of the electronic devices they seized. The warrant application specifically "request[ed] the Court's permission to

2

seize the computer hardware (and associated peripherals) that are believed to contain some or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described." [*Id*. at 9.]

The search warrant signed by Lake Superior Court Judge Julie Cantrell expressly authorized the search for and seizure of "ELECTRONIC DEVIECES [sic]: to include but not limited to a black in color touch screen cellular telephone which belongs to COSBY, Ronnie and has the telephone number 773-786-3337 assigned to it." [*Id.*] The fact that the warrant authorized the actual search of the phone is made clear by the next paragraph of the warrant which authorized the seizure of "[c]omputer passwords and other data security devices," explaining that "[t]hese items will be seized in order to facilitate the search of the computer systems/computer system components/computer systems storage media named above." [*Id.*] The search warrant was executed that afternoon, and one of the items seized was a "black color touch screen style cell phone with silver edge banding." [DE 109-1 at 11.]

Months later, on October 14, 2015, Mark Biller, acting as a Special Agent with Homeland Security Investigations, applied to United States Magistrate Judge Paul R. Cherry of this court for a warrant to search the content of the black ZTE cell phone that had been seized in March. [DE 109-1 at 32.] Biller's supporting affidavit argued that there was probable cause to believe the cell phone "contains evidence of sex trafficking in violation of 18 U.S.C. §1591, transporting a minor for prostitution in violation of 18 U.S.C. §2423(a), production of child pornography in violation of 18 U.S.C. §2251(a), and

3

distribution of child pornography in violation of 18 U.S.C. §2252(a)(2)." [*Id*. at 33, ¶4.] The warrant issued by Judge Cherry once again authorized the search of the ZTE cell phone "currently located at the Hammond Police Department," and specifically authorized "the forensic examination of the device for the purpose of identifying the electronically stored information described in Attachment B." [*Id*. at 14.] The list in Attachment B included telephone numbers, text messages, email messages, pictures, videos and "[a]dvertising materials that appear to relate in any way to prostitution." [*Id*. at 15.]

Biller revealed in the October affidavit that he had in fact already searched the phone's contents after its seizure in March: "On March 19, 2015, I downloaded the contents of the cell phone listed in Attachment A using the law enforcement tool Cellebrite. I subsequently reviewed the report generated by Cellebrite." [DE 109-1 at 43, ¶44.] The October warrant was sought out of an abundance of caution, Biller explained, although it was Biller's belief that the March warrant had authorized him to search the contents of the phone. Biller believed this because in his application for the March warrant, he "clearly stated the facts supporting probable cause to search the contents of the phone, which are the same facts sated in the present Affidavit," and at that time had "further requested the court's permission, not only to seize the phone, but also 'to conduct an off-site search of the hardware for the evidence described' and 'to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described.'" [*Id*. at 42-43, quoting 109-1 at 9.]

4

**Discussion**

Cosby makes a straightforward argument that "[t]he March 17, 2015 warrant merely permitted the search of the Michigan Street apartment and the seizure of the black cell phone. Law enforcement extracting and downloading the contents of the black cell phone illegally went beyond the scope of the search authorized by the warrant and requires suppression." [DE 109 at 4.] Cosby's wrong on both the facts and the law. For starters, as shown above, it is plain that the warrant in this case did in fact expressly authorize the officers to search the contents of the cell phone. But even if it didn't, *United States v. Fifer*, 863 F.3d 759, 766 (7th Cir. 2017), torpedoes Cosby's argument. In *Fifer*, the Seventh Circuit rejected the argument that a warrant authorizing the seizure of electronic devices did not also approve the search of their contents.

*Fifer* involved an initial state court search warrant issued in a drug investigation, and a later-issued federal search warrant after sexually explicit images of a teenage girl were found on a cell phone that had been seized. The Court of Appeals said:

> [B]y explicitly authorizing the police to seize the electronic devices found in Fifer's apartment, the warrant implicitly authorized them to search those devices as well...After all, the whole point of a search warrant is to authorize police to *search* for evidence of a crime. And it seems inescapable that if there's probable cause to seize an object because it might contain evidence of a crime, then there's also probable cause to search the object for the evidence it might contain.

*Id*. (italics in original). This plainly-stated holding in *Fifer* is fatal to Cosby's motion to suppress the evidence obtained by the search of the ZTE cell phone's contents. The government's cautious decision here to obtain a second more specific warrant is

expressly disclaimed as unnecessary by *Fifer*: "Why, then, would the issuing judge order the police to seize an item – such as a computer, a phone, or even a safe...– only to have them reapply for an essentially identical warrant to search the item seized?  Why, when the same probable cause that justified the seizure also justifies the search?"  *Fifer*, 863 F.3d at 766.

Cosby does not attempt to distinguish *Fifer*, nor does it appear possible that he could.  In fact, this case presents a stronger factual basis for concluding that the first warrant covered the search of the phone's contents than the facts of *Fifer*.  In that case, Fifer was prosecuted for multiple counts of producing child pornography, and moved to suppress evidence obtained from his electronic devices.  There the initial search warrant was based on an investigation of drug dealing, and authorized the search of Fifer's apartment to seize "drugs and other evidence including cell phones and computers."  *Fifer*, 863 at 763.  The warrant application made no showing of probable cause to believe that child pornography – the evidence sought to be suppressed – would be found.

By contrast, in this case, the March warrant application expressly attested to facts supporting a belief that evidence of child pornography and the promotion of prostitution would be found on the cell phone, and made clear that the investigators wanted to seize and search it, requesting "the Court's permission to seize...and to conduct an off-site search of the hardware for the evidence described."  [DE 109-1 at 9.]  Even more specifically, the warrant itself particularly described the black cell phone

6

whose contents Cosby now seeks to suppress.  So, unlike *Fifer*, the challenged warrant here targeted both the particular cell phone and evidence particular to the charges prosecuted, after the government specifically referenced searching the contents of the electronic devices seized.

Because the Lake County search warrant issued in March 2015 authorized the search of the contents of the cell phone,  Cosby fails to demonstrate that any of the evidence derived from the phone's contents is subject to suppression.  As the government points out, this conclusion is clearly applicable to a federal warrant under Fed.R.Crim.P. 41(e)(2)(B), which provides that, unless otherwise specified,  a warrant authorizing the seizure of electronic storage media or electronically stored information "authorizes a later review of the media or information consistent with the warrant."

The government further buttresses its opposition to Cosby's motion to suppress by invoking the independent-source doctrine and the doctrine of inevitable discovery, both of which were found to support the denial of suppression in *Fifer* as well.  [DE 116 at 12; *Fifer*, 863 F.3d at 767.]  As in *Fifer*, the independent-source doctrine would support the admission of the evidence "because it was separately discovered through the execution of the federal search warrant."  *Id*.  Similarly, even if Biller had not run and reviewed the Cellebrite report on the phone in March, "the federal warrant still would have issued based on [the victims'] statements during [their] interview[s], and the evidence ...still would have been discovered as a result of that warrant."  *Id*.

From each of at least three angles, then, the evidence obtained from the contents of the cell phone in this case was lawfully obtained and is not subject to suppression.

ACCORDINGLY:

Defendant Ronnie Cornell Cosby's motion to suppress [DE 109] is DENIED.

SO ORDERED.

ENTERED: October 11, 2017.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT